UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JEREMY LEE WATSON-BUISSON**                              **CIVIL ACTION**

**VERSUS**                                                 **NO. 12-1871**

**CARLOS LOUQUE, ET AL.**                                  **SECTION: "A"(1)**

## REPORT AND RECOMMENDATION

Plaintiff, Jeremy Lee Watson-Buisson, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. He named as defendants Carlos Louque, Gary Bordelon, James M. LeBlanc, and Marlin Gusman. In this lawsuit, plaintiff claims that the defendants failed to protect him from harm while he was incarcerated within the Orleans Parish Prison system. He also claims that some of his personal property was stolen or lost during his subsequent transfer to the Elayn Hunt Correctional Center.[1]

### I. James LeBlanc

Defendant LeBlanc has filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.[2] Plaintiff has opposed that motion.[3]

---

[1] In his rambling complaint, plaintiff also complains about things which transpired after he was transferred to the Elayn Hunt Correctional Center. For example, he alleges that he was not properly fed or provided appropriate medical care at that facility and that he was he was harassed for filing administrative grievances. However, he does not appear to be asserting any actual claims based on those allegations, in that he has not named any person from that facility as a defendant in this lawsuit.

[2] Rec. Doc. 12.

[3] Rec. Doc. 16.

LeBlanc argues that any claims against him in his official capacity are barred by sovereign immunity and, therefore, should be dismissed pursuant to Rule 12(b)(1). He is correct. LeBlanc, as the Secretary of the Louisiana Department of Public Safety and Corrections, is a state official. Because a claim for monetary damages against a state official in his official capacity is actually a claim against the state itself, such claims are barred by the state's immunity. Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *2 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010); Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008).[4] That immunity deprives the Court of jurisdiction, and the official-capacity claim against LeBlanc should therefore be dismissed without prejudice pursuant to Rule 12(b)(1). Warnock v. Pecos County, 88 F.3d 341, 343 (5th Cir. 1996).

---

[4] The United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ... By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).

As to any claim against him in his individual capacity, LeBlanc argues that dismissal is appropriate because he was never properly served in that capacity and, moreover, no proper individual-capacity claim has been stated.

This Court declines to recommend that the claims against LeBlanc be dismissed for failure to effect proper service. Plaintiff, an incarcerated individual who is proceeding *pro se*, has attempted to effect proper service, opines that any defects in service were not his fault, and has moved for leave to remedy any defects. Moreover, this Court has the discretion, and would be inclined to exercise that discretion, to allow him to remedy any defects in service.[5] That said, it would ultimately serve no real purpose to require him to jump through additional hoops to "properly" serve LeBlanc, who is already clearly aware of this suit, has appeared herein, and argues that no cognizable claim has been stated against him in any event. Because dismissal would still be appropriate under Rule 12(b)(6) for the following reasons even if service were to be properly effected, the interests of justice are better served by simply proceeding directly to that issue.[6]

---

[5] "Ordinarily, pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings. Whether to dismiss a case for insufficient service of process or extend the time for service is left to the district's court's discretion." Goodwin v. Housing Authority of New Orleans, Civ. Action No. 11-1397, 2013 WL 3874907, at *13 (E.D. La. July 25, 2013) (citation, quotation marks, and brackets omitted).

[6] The Court notes that LeBlanc expressly seeks dismissal under Rule 12(b)(6) in the alternative. However, even if he had not done so, this Court acting *sua sponte* could, and would, recommend dismissal of the individual-capacity claims against LeBlanc. Federal law specifically provides that federal courts are to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any

3

A complaint fails to state a claim on which relief may be granted under Rule 12(b)(6) when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

In deciding a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. Lormand v. US Unwired, Inc., 565 F.3d 228, 239 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

---

portion of the complaint, if the complaint –

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b). That provision applies even to cases where, as here, the plaintiff has paid the filing fee. Lerma v. Falks, 338 Fed. App'x 472, 473 (5th Cir. 2009); Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998).

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

The problem here is LeBlanc's lack of personal involvement in the incidents giving rise to plaintiff's claims. It is clear that "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In the instant case, there is no allegation that LeBlanc was personally involved in any deprivation of plaintiff's constitutional rights. In fact, as LeBlanc notes in his motion, plaintiff failed to include *any* specific factual allegations whatsoever against LeBlanc in the original complaint. While plaintiff attempted to cure that defect in his opposition to the motion to dismiss,[7] the additional allegations included therein do not ultimately aid him for the following reasons.

The claim against LeBlanc is based on the contention that he had plaintiff housed within the Orleans Parish Prison system rather than having him transferred immediately to a state-run facility. However, there is no reason whatsoever to believe that LeBlanc was personally involved in the decision of where plaintiff was housed. Moreover, even in the unlikely event that LeBlanc was personally involved in the decision, neither that decision itself nor the general policy allowing state prisoners to be housed in parish jails amounted to a constitutional violation. A prisoner simply has

---

[7] Rec. Doc. 16. The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). Therefore, a *pro se* litigant's supplemental filings that "embellish[] the original complaint's averments" should and will be considered in connection with the instant motion. See id.

no right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Fuselier v. Mancuso, 354 Fed. App'x 49 (5th Cir. 2009); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).[8]

For all of the foregoing reasons, LeBlanc's motion to dismiss should therefore be **GRANTED**.

### II. Carlos Louque, Gary Bordelon, and Marlin Gusman

Defendants Louque, Bordelon, and Gusman have filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[9] Plaintiff has opposed that motion.[10]

---

[8] Moreover, the Court notes that Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department." La.Rev.Stat.Ann. § 15:824(A). State law further expressly provides that, when necessary, state prisoners may be confined in parish jails. La.Rev.Stat.Ann. § 15:824(B)(1)(a).

[9] Rec. Doc. 20.

[10] Rec. Doc. 22.

"A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209-10 (5th Cir. 2010). Accordingly, as the United States Fifth Circuit Court of Appeals has explained:

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.

Id. at 210 (citations, quotation marks, and brackets omitted).

### A.  Failure-to-Protect Claims

Defendants Louque, Bordelon, and Gusman first argue that the claims that they failed to protect plaintiff are prescribed. According the complaint, plaintiff was physically assaulted on three separate dates in 2011: January 17, May 30, and July 6. For the following reasons, the undersigned finds that plaintiff's claims concerning the first two of those incidents are prescribed but his claims concerning the third incident is not.

"[F]or a § 1983 action, the court looks to the forum state's personal-injury limitations period. In Louisiana, that period is one year." Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998) (citation omitted); see also Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); Smith v. Orleans Parish Prison, Civ. Action No. 08-3786, 2008 WL 2951279, at *1 (E.D. La. July 25, 2008); La. Civ. Code Ann. art. 3492. "Ordinarily, a cause of action under section 1983 accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Price v. City of San Antonio, Texas, 431 F.3d 890, 893 (5th Cir. 2005) (quotation marks omitted); see also Smith, 2008

7

WL 2951279, at *1. Therefore, a failure-to-protect claim accrues on the date the plaintiff was attacked and injured. See, e.g., Moore v. 4th Judicial District Court, Civ. Action No. 3:11-cv-1731, 2012 WL 299555, at *4 (W.D. La. Jan. 11, 2012), adopted, 2012 WL 860406 (W.D. La. Mar. 12, 2012); Steele v. St. Martin Parish Sheriff's Office, Civ. Action No. 6:10-cv-1788, 2011 WL 4747895, at *8 (W.D. La. Sept. 22, 2011), adopted, 2011 WL 4765196 (W.D. La. Oct. 26, 2011); Gamez-Abrego v. Orleans Parish Jail, Civ. Action No. 10-1595, 2010 WL 3523038, at *3 (E.D. La. July 19, 2010), adopted, 2010 WL 3523037 (E.D. La. Sept. 1, 2010).

In the instant case, plaintiff correctly notes that this civil action was filed when he placed the complaint in the mail on June 28, 2012.[11] At that point, any claims concerning the incidents on January 17 and May 30, 2011, were clearly prescribed under the applicable one-year limitations period and must be dismissed on that basis.[12] However, the complaint was filed less than one year after the incident on July 6, 2011, and so that claim is not prescribed. Nevertheless, as the defendants correctly argue in the alternative, the claim concerning the July 6 incident should still be dismissed for the following reasons.

---

[11] A prisoner's complaint is considered "filed" when it is given to the prison authorities for mailing to the Clerk of Court. Cooper v. Brookshire, 70 F.3d 377, 378 (5th Cir. 1995). Plaintiff alleges that he mailed his complaint on June 28, 2012. Rec. Doc. 22, p. 10. The record supports that allegation, in that the complaint was mailed to the Court in an envelope metered on that date. Rec. Doc. 1, p. 37.

[12] The Court notes that the limitations period is tolled while an administrative grievance concerning the claim is pending. Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999). However, plaintiff's grievance concerning the January 17 incident was filed and answered in only one day (January 19, 2011), Rec. Doc. 1, pp. 8-9, and he filed no grievance concerning the May 30 incident.

To the extent that plaintiff's failure-to-protect claim is brought against Louque, Bordelon, and Gusman in their official capacities, plaintiff has failed to state a proper claim. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, any official-capacity claims against the defendants would in reality be claims against the local governmental body itself. Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.

In the instant case, plaintiff does not even allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Accordingly, he has failed to state a proper official-capacity claim.

Plaintiff also has not stated a proper claim against the defendants in their individual capacities. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Moreover, as previously noted in this opinion, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

As to Sheriff Gusman, plaintiff does not allege that Gusman had any personal involvement whatsoever in the events giving rise to plaintiff's claim. Further, Gusman may not be held liable pursuant to § 1983 under any theory of strict liability[13] or vicarious liability[14] for federal civil rights violations allegedly committed by his subordinates.

Plaintiff's allegations against defendants Louque and Bordelon, even if true, likewise do not state a meritorious failure-to-protect claim. In this case, plaintiff alleges that he was targeted by

---

[13] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[14] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

10

other inmates due to the nature of his crimes.[15] It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). However, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Further, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); see also Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

As to defendant Bordelon, plaintiff does not even allege that Bordelon was personally aware that plaintiff was purportedly targeted and in danger, much less that Bordelon was indifferent to a need for protection. Moreover, although it is somewhat unclear, it appears that the claim against Bordelon may in fact be only that he denied plaintiff's request to be transferred to a facility operated by the Louisiana Department of Public Safety and Corrections. If that is in fact the claim against Bordelon, it obviously has no merit. As previously explained in this opinion, a prisoner no right to

---

[15] Plaintiff alleges that he was charged with computer-aided solicitation of a minor and pornography involving juveniles. Rec. Doc. 1, p. 14.

be transferred from one prison facility to another, even if life in one prison may be much more disagreeable. Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Fuselier v. Mancuso, 354 Fed. App'x 49 (5th Cir. 2009); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009).

As to defendant Louque, it is true that he handled the grievance plaintiff filed after the initial attack on January 17, 2011. However, in that grievance, plaintiff requested that he be moved, and Louque *granted* that request, transferring plaintiff to a different tier away from his attacker.[16] Therefore, far from being indifferent to plaintiff's plight, Louque immediately acted to protect him. While it is true that plaintiff ultimately encountered additional difficulties after the transfer, there is no indication Louque was personally aware of any danger plaintiff faced in the tier where he was located on July 6. As a result, Louque cannot be held liable for the incident on July 6, in that he clearly cannot be said to have been deliberately indifferent for failing to protect against a potential harm of which he was unaware. Farmer v. Brennan, 511 U.S. 825, 844 (1994); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009).

The Court notes that it appears that plaintiff is now arguing that he should have been placed in protective custody rather than simply moved to a different tier. While, in hindsight, that might have been a better choice, that simply is not determinative. All that was required was that Louque's

---

[16] Rec. Doc. 1, pp. 8-9.

solution be a *reasonable* one. See, e.g., Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004); see also Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). It was. Moreover, the Court notes that plaintiff himself was apparently satisfied with Louque's response at the time, in that plaintiff does not allege that he appealed that response to his grievance despite being expressly advised of the right to appeal on the response itself.[17]

---

[17] Rec. Doc. 1, p. 9. Lastly, the Court further notes that plaintiff's claim is seemingly based on a premise that an inmate's constitutional rights are violated when a prison official fails to successfully guarantee the inmate's safety. That contention is neither supported by controlling law nor even minimally practical considering realties of prison administration and the pervasiveness of inmate disputes over matters both large and small. In light of those realities, courts have noted that it is impossible to expect that prison officials can make jails havens of absolute safety. For example, one court opined:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

Campbell v. Anderson, 335 F.Supp. 483, 486 (D. Del. 1971); see also Farmer, 511 U.S. at 858-89 (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed,

> [t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals. Every day prison officials must make decisions as to whether a dispute between two prisoners is a genuine threat to their safety or merely a routine dispute that will soon be forgotten. Sometimes, an official makes an incorrect assessment

13

B. Property Claims

Plaintiff also claims that he was denied an opportunity to take his personal property with him upon his transfer from the Orleans Parish Prison system to the Elayn Hunt Correctional Center. It is unclear whether he is contending that the property was stolen by prison officials or merely lost. Nevertheless, any claim concerning his personal property must be dismissed for the following reasons.

First, such claims simply are not cognizable in federal court. In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his property, there is no due process violation *if* the state provides an adequate postdeprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional* deprivations of property. In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate the Due Process Clause at all.

It is of no consequence whether plaintiff is alleging that he was deprived of his property through negligence or an intentional act, because "in neither instance does he state a valid § 1983

---

regarding the seriousness of the situation and someone gets hurt; however, the official is entitled to qualified immunity and cannot be held liable if he made a good faith error.

McKnight v. Livingston, Civ. Action No. H-06-3674, 2007 WL 221926, at *2 (S.D. Tex. Jan. 25, 2007) (citations omitted).

action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). If plaintiff is claiming negligence, his claims are barred by Daniels. If he is claiming intentional conduct, the claims are barred by Hudson, in that Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919 (5th Cir. 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105 (5th Cir. 2002); Odom v. St. Tammany Parish S.O., Civ. Action No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009).

Second, even if plaintiff's property claim were not barred by the Parratt/Hudson doctrine, it would still fail because he has not named a proper defendant. The only Orleans Parish defendants named are Louque, Bordelon, and Gusman; however, as they note in their motion, plaintiff makes no allegation that they were personally involved in depriving him of his property. As previously explained, there is no basis for an individual-capacity claim against them without such allegations of personal involvement. As they also argue, there is no proper claim against them in their official-capacities because, as previously explained, a plaintiff asserting such a claim must allege that his constitutional rights were violated as a result of a policy or custom and, further, identify the policy or custom. Here, plaintiff has made no such allegation.[18]

---

[18] Out of an abundance of caution, the Court notes that plaintiff references other respects in which he found his incarceration within the Orleans Parish Prison system unpleasant. It is unclear from the complaint whether he meant to assert separate claims based on those various conditions of his confinement. However, even if that was his intention, those claims fail for these same reasons, i.e. lack of allegations of personal involvement of Louque, Bordelon, or Gusman as required for an individual-capacity claim and lack of an allegation that the purported violations arose from an official policy or custom as required for an official-capacity claim. Moreover, in any event, there

15

For all of the foregoing reasons, the Court finds that plaintiff has failed to state proper claims against Louque, Bordelon, and Gusman. Therefore, their motion to dismiss should be **GRANTED**.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the motion to dismiss filed by James LeBlanc, Rec. Doc. 12, be **GRANTED** and that the claims against him be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion for judgment on the pleadings filed by Carlos Louque, Gary Bordelon, and Marlin Gusman, Rec. Doc. 20, be **GRANTED** and that the claims against them be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

is no indication whatsoever that those other conditions resulted in physical injury. As a result, any claims for compensatory damages based on those conditions would be barred by federal law. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); see, e.g., Herman v. Holiday, 238 F.3d 660, 665-66 (5th Cir. 2001); see also Geiger v. Jowers, 404 F.3d 371, 375 (5th Cir. 2005) ("We agree with the majority of the other federal circuits that have addressed this issue in holding that it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.").

a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this nineteenth day of August, 2013.

                                                **SALLY SHUSHAN**
                                                **UNITED STATES MAGISTRATE JUDGE**

---

[19] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.